IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DAVID H. PEASE, III and LISA PEASE, ) | |
| ) | CIVIL ACTION NO. |
| Plaintiffs, ) | 2:07-CV-340-ID |
| ) | |
| v. ) | |
| ) | **ORAL ARGUMENT** |
| MAIN TURBO SYSTEMS, et al., ) | **REQUESTED** |
| ) | |
| Defendants. ) | |

## DEFENDANT MAIN TURBO SYSTEMS, INC.'S MOTION TO DISMISS

In this case, a company in Ohio shipped a part to a company in California. The company in California refurbished the part and sent it back to Ohio. The part was then installed in a plane piloted by an Ohio resident. The plane crashed in Tennessee. The only connections the California company has with Alabama are (1) a company in Dallas, Texas sometimes sends to California parts manufactured by an Alabama company and (2) over the last two and a half years, the California company has realized less than one half of one (1) percent in revenues from sales to Alabama customers.

The only connection that this lawsuit has with Alabama is that one of the named defendants, Kelly Aerospace, Inc., is based in Montgomery, Alabama. Jurisdiction as to one is not jurisdiction as to all, however, and plaintiffs have not sufficiently alleged, nor can they establish, that Main Turbo Systems, Inc. ("Main Turbo") has continuous and systematic contacts with Alabama to support exercise of personal jurisdiction over it. Main Turbo has no "presence" in Alabama, and asserting jurisdiction in this instance would offend "traditional notions of fair play and substantial justice." Therefore, Main

1

Turbo respectfully requests that the Court dismiss it from this action for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

I.  **Exercising Personal Jurisdiction Over Main Turbo is Unwarranted Because It Is Not Registered to Do Business In Alabama, Has No Employees, Property, Or Offices Here, and Does Not Advertise In Local Alabama Media Markets**

Main Turbo is a family-owned aircraft repair business located in Visalia, California. Exhibit A, Affidavit of Gary Main, ¶ 2. It has only six employees and has been in business since 1988. Id. It was founded by Bill Main and his son Gary Main. Id.

Main Turbo has no offices in Alabama, owns no property in Alabama, is not registered to do business in Alabama, and employs no workers in this state. Id. at ¶ 3. None of Main Turbo's employees have ever been to Alabama. Id. Main Turbo does not advertise in any local Alabama media or advertising markets. Id. at ¶ 4.

Main Turbo maintains an Internet website at the following address: http://www.mainturbo.com. Id. at ¶ 5. The website contains limited information about repair services offered by Main Turbo, a troubleshooting guide, and information about the warranty that Main Turbo provides for its work. Id. Main Turbo's website does not allow its customers to "post" information or inquiries, does not allow customers to order service or parts, and does not allow customers to communicate with Main Turbo through the website. Id. The website is strictly informational in nature. Id.

As part of its repair business, Main Turbo sometimes uses parts originally manufactured by Kelly Aerospace, Inc. ("Kelly"). Id. at ¶ 6. However, Main Turbo has

no direct business or contractual relationship with Kelly. Id. Instead, any Kelly parts used on repairs conducted by Main Turbo are received from Aviall, an aftermarket aircraft parts distributor based in Dallas, Texas. Id.

With respect to the aircraft operated by David Pease at the time of the accident, Main Turbo received the turbocharger from Mr. Pease's plane in June 2005 from Air Tolin, an aircraft service and repair company located in Cincinnati, Ohio. Id. at ¶ 7. Air Tolin requested that Main Turbo overhaul the airplane's turbocharger. Id. Main Turbo performed the requested repair in California and shipped the turbocharger back to Air Tolin in Ohio. Id.

Main Turbo services approximately 1,000 turbochargers per year. Id. at ¶ 8. According to its records, Main Turbo has received repair orders from only six Alabama customers since January 2005. Id. Main Turbo charged approximately $18,765.58 for all of the orders it received from those Alabama customers since January 2005. Id. The $18,765.58 in revenues received from these six customers accounted for less than one half of one (1) percent of the revenues generated by Main Turbo during the same time period. Id. None of these orders involved the turbocharger at issue in the Peases' lawsuit. Id.

## II. Applicable Law

Determining personal jurisdiction requires two inquiries. The first step involves determining whether the forum state's long-arm statute provides a basis for jurisdiction. See Cable/Home Communications Corp. v. Network Productions, Inc., 902 F.2d 829, 855 (11th Cir. 1990). If it does, then the court must determine whether the exercise of

personal jurisdiction over the defendants would offend "traditional notions of fair play and substantial justice" under the Due Process Clause. Internat'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Alabama's long-arm statute provides for the exercise of personal jurisdiction as follows:

> An appropriate basis exists for service of process outside of this state upon a person or entity in any action in this state when the person or entity has such contacts with this state that the prosecution of the action against the person or entity in this state is not inconsistent with the constitution of this state or the Constitution of the United States . . . .

Ala. R. Civ. P. 4.2(b). Because Alabama's nonresident personal jurisdiction is coextensive with the constitutional requirements of due process, the state law and due process analyses collapse into a single inquiry. Butler v. Beer Across America, 83 F. Supp. 2d 1261, 1266 (N.D. Ala. 2000).

In personam jurisdiction complies with due process when (1) the nonresident defendant has purposefully established minimum contacts with the forum state, and (2) the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice. Olivier v. Merrit Dredging Co., Inc., 979 F. 2d 827, 830-831 (11th Cir. 1992). There are two types of personal jurisdiction: specific and general. Specific personal jurisdiction is founded on a party's contacts with the forum state that are related to the cause of action. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 & n. 8 (1984). General personal jurisdiction arises from a party's contacts with the forum state that are unrelated to the litigation. Id. at n. 9. "The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant the forum state." Consolidated Development Corp. v. Sherritt, Inc., 216

F.3d 1286, 1292 (11th Cir. 2000); General Cigar Holdings, Inc. v. Altadis, 205 F. Supp. 2d 1335 (S.D. Fla. 2002) (to justify exercise of general jurisdiction, contacts must be "especially pervasive and substantial"). The burden of establishing personal jurisdiction over a nonresident defendant is on the plaintiff. See Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 255 (11th Cir. 1996).

### III.   Main Turbo's De Minimis Contacts with Alabama are Not Sufficient to Exercise General Jurisdiction Over Main Turbo and Do Not Justify Haling Main Turbo into Court in Alabama to Defend this Action

It is undisputed that Main Turbo had no contacts with Alabama that relate to this cause of action. The plaintiffs are residents of Ohio; the alleged faulty repair of plaintiffs' turbocharger by Main Turbo was performed in California; and the crash in question occurred in Tennessee. Complaint, ¶ 7, 15, 18. Therefore, there is no basis for specific jurisdiction as to Main Turbo in this suit. The only remaining inquiry is whether Main Turbo is subject to general jurisdiction in Alabama.

Under no analysis can Main Turbo be said to have "continuous and systematic general business contacts" with Alabama. Main Turbo does not now and never has had any office, employee, property, or registered agent in Alabama, nor is it registered to do business in Alabama; similarly, none of Main Turbo's six employees have ever visited the state. The overwhelming body of caselaw from the federal courts indicates that general jurisdiction will not be found when a company lacks a physical "presence" in a state in this way.[1] Similarly, general jurisdiction is not exercised over a company where,

---

[1] Butler v. Beer Across America, 83 F. Supp. 2d 1261, 1266 (N. D. Ala. 2000) (finding no general personal jurisdiction where nonresident defendant was not registered to do business in Alabama, maintained no offices or agents in Alabama, did not own

5

as here, it does not specifically target the state for advertising[2] and the company maintains an "information only" website that cannot be used to conduct business.[3]

---

property in Alabama, and no key personnel had ever visited state); Thomas v. Mitsubishi Motor North America, 436 F. Supp. 2d 1250, 1255 (M.D. Ala. 2006) (finding no general jurisdiction where defendant did not have offices, employees, agents, or property in Alabama); Norben Import Corp. v. Metropolitan Plant & Flower Corp., (S.D. N.Y. 2004) 2004 WL 2378295 at *2 (court cannot exercise general jurisdiction when defendant has no officer, bank account, property, or employees in New York); Gardemal v. Westin Hotel Co., 186 F.3d 588, 596 (5th Cir. 1999) (no general jurisdiction over Mexican corporation managing hotel where Texas resident drowned when no indication as to extent, duration, or frequency of its business dealings in Texas, and record indicated no employees, office, or address in Texas); First Trust Nat. Ass'n v. Jones, Walker, et al., 996 F. Supp. 585, 589 (S.D. Miss. 1998) (no general jurisdiction over defendant law firm in Mississippi where firm had no offices there, did not own property there, was not qualified to do business there, had no agent for service of process there, and had never advertised or solicited business there).

[2]     Main Turbo does advertise in a Trade-A-Plane, a national magazine advertising aviation parts, aircraft sales, used aircraft and aircraft dealers. However, this is not enough to exercise general jurisdiction over Main Turbo. See Seymour By and Through Seymour v. Bell Helmet Corp., 624 F. Supp. 146, 149 (M.D. Ala. 1985) (finding that national advertising campaign could not establish continuous and systematic contacts with Alabama merely because it reached the state); Dluhos v. Strasberg, (D. N.J. 2005) WL 1683732 at *6-7 (advertising in magazines that are distributed through the forum state and enrolling students from the forum state are not enough to support general jurisdiction); Hlavac v. DGC Properties Co., (E.D. Pa. 2005) 2005 WL 839158 at *4 (although advertising done in the forum state sometimes can serve as a basis for general jurisdiction, it could not be so when the advertisements were distributed by a third party instead of the defendant itself); Gray v. Lewis & Clark Expeditions, Inc., 12 F.Supp. 2d 993, 997 (D. Neb. 1998) (advertising in national publications and soliciting business from the public at large is not enough to create a basis for general jurisdiction under the Due Process Clause).

[3]     Santana Prods., Inv. V. Bobrick Washroom Equip., 14 F. Supp. 2d 710, 712-714 (M.D. Pa. 1998) (neither transaction of business in forum state as agent for alleged co-conspirator, appearance in national publication, nor merely informational webpage provided sufficient grounds upon which to base general jurisdiction); Accu-Sport Int'l Inc. v. Swing Dynamics, 367 F. Supp. 2d 923, 928-29 (M.D.N.C. 2005) (fact that defendant published advertisements in nationwide magazines and maintained an informational website with minimal interactivity were equally insufficient for general jurisdiction); R&B Falcon Drilling (Int'l & Deepwater), Inc. v. Noble Denton Group, 91 Fed. Appx. 317, 321 (5th Cir. 2005) (maintenance of passive website for advertising does not subject foreign company to general jurisdiction absent additional contacts); InfoSys

6

Furthermore, the fact that Main Turbo has derived less than one half of one (1) percent of its revenues from six Alabama customers since 2005 further demonstrates the de minimis nature of the contacts the company has with this state.[4]

The above facts and current case law simply refute plaintiffs' conclusory statement in the Complaint that "Defendant, Main Turbo Systems, Inc., does substantial and systematic business in the State of Alabama by virtue of the repairs it performs on Kelly Aerospace, Inc., turbochargers and turbocharger component parts." Complaint, ¶ 6. In addition to being incorrect, plaintiffs' argument misapplies the jurisdictional test. The factors to consider in a general jurisdiction analysis are not what contact a company may have had with a product that originated in a state, but what *direct* contacts the company has with the state such that it "purposefully avails itself of the privilege of

---

Inc. v. Billingnetwork.com, Inc., 2003 WL 22012687 at *3-4 (N.D. Ill. 2003) (national advertisements, including those on Internet, were insufficient to subject defendant to jurisdiction in Illinois; there must be evidence that defendant intended its advertisements to reach particular state).

[4]    Harlow v. Children's Hosp., 432 F. 3d 50, 66 (1st Cir. 2005) (federal district court did not have general jurisdiction over Massachusetts hospital where Maine residents accounted for only .5 percent of its revenues); Kimball v. Countrywide Merchant Servs., 2005 WL 318752 at *3 (E.D. Pa. 2005) (court declined to find general jurisdiction when defendant company had five or fewer sales in forum state in last seven years representing less than one percent of its annual sales); Accu-Sport Int'l Inc. v. Swing Dynamics, Inc., 367 F. Supp. 923, 928 (M.D. N.C. 2005) (single sale by defendant's predecessor to forum state was not sufficient for general jurisdiction where sale accounted for only 1.3% of defendant's annual sales and was de minimis); Adell Corp. v. Elco Textron, Inc., 51 F. Supp. 2d 752, 756 (N.D. Tex. 1999) (no general jurisdiction when sale of parts to Texas was less than one percent of total sales); Haas v. A.M. King Indus., Inc., 28 F. Supp. 2d 644, 650 (D. Utah 1998) (general jurisdiction denied when contacts with forum state amounted to advertisements, direct mailings, maintaining a website, and less than 1% in total sales); Stairmaster Sports/Medical Products, Inc. v. Pacific Fitness Corp., 916 F. Supp. 1049, 1052-53 (W.D. Wash. 1994) (holding that independent distributor's sales of unrelated products in the forum state, that amounted to approximately three percent of the defendant's sales volume, were insufficient to establish continuous and systematic contacts).

7

conducting activities *within* the forum State, thus invoking the benefits and protections of its laws." Butler v. Beer Across America, 83 F. Supp. 2d 1261, 1265 (N.D. Ala. 2000) (emphasis added) (citing Hanson v. Denckla, 357 U.S. 235, 253 (1958)).  No evidence of such purposeful availment exists here.

In summary, plaintiffs cannot show, as they must, that Main Turbo's de minimis contacts with Alabama are enough to warrant imposition of general personal jurisdiction. The total lack of presence by Main Turbo in Alabama and its sporadic and attentuated business contacts within the state are simply insufficient to justify haling Main Turbo into Court to defend this lawsuit.

## IV.   Conclusion

For the foregoing reasons, Main Turbo respectfully requests that the Court dismiss it from this lawsuit for lack of personal jurisdiction.

_____
One of the Attorneys for Defendant
Main Turbo Systems

OF COUNSEL:
Jackson R. Sharman III (SHARJ6416)
J. Chandler Bailey (BAILC4526)
Sanford G. Hooper (HOOPS7271)
LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, Alabama  35203-3200
(205) 581-0700
(205) 581-0799 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on this 13 day of July, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Thomas R. Edwards, Esq.
Thomas Edwards, P.C.
8244 Old Federal Road
Montgomery, AL 36117
tedwards2@mindspring.com

Jerome L. Skinner, Esq.
Nolan Law Group
3074 Madison Road
Cincinnati, OH 45209
jls@nolan-law.com


Nolan Law Group
20 North Clark Street – 30th Floor
Chicago, IL 60602

Charles B. Paterson, Esq.
Kelly F. Pate, Esq.
Balch & Bingham LLP
Post Office Box 78
Montgomery, Alabama 36101-0078
cpaterson@balch.com
kpate@balch.com


Christopher S. Rogers, Esq.
Huie Fernambucq Stewart, LLP
Three Protective Center
2801 Highway 280 South, Suite 200
Birmingham, Alabama 35223-2484
csr@hfsllp.com


_____
OF COUNSEL

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DAVID H. PEASE, III and LISA PEASE, ) | |
| ) | |
| Plaintiffs, ) | CIVIL ACTION NO. |
| ) | |
| v. ) | 2:07-CV-340-ID |
| ) | |
| MAIN TURBO SYSTEMS, et al., ) | |
| ) | |
| Defendants. ) | |

### AFFIDAVIT OF GARY L. MAIN

STATE OF CALIFORNIA    )
                       )
COUNTY OF _____  )

Before me, the undersigned notary public, personally appeared Gary L. Main, who being known to me, under oath did state as follows:

1. My name is Gary Main. I am over the age of nineteen years old and have personal knowledge about the matters stated herein.

2. I am the President of Main Turbo Systems, Inc. ("Main Turbo"). Main Turbo was started by my father, Bill Main, and me in 1988. Main Turbo is still family-owned and has only six employees at its only office in Visalia, California. Main Turbo is in the business of repairing and overhauling turbochargers that are used on turbo propeller aircraft.

3. Main Turbo does not now maintain and never has maintained any offices in Alabama. Likewise, Main Turbo has never had any employees in Alabama, nor has it ever registered to do business in Alabama. Our company has never had any registered agents in Alabama. None of Main Turbo's current employees have ever visited Alabama. Main Turbo has never owned property in Alabama.

4. Main Turbo does not advertise in any local Alabama media or advertising markets. Main Turbo places occasional advertisements in Trade-A-Plane, a national magazine advertising aviation parts, aircraft sales, used aircraft and aircraft dealers.

5. Main Turbo maintains an Internet website at the following address: http://www.mainturbo.com. The website contains limited information about repair services offered by Main Turbo, a troubleshooting guide, and information about the warranty that Main Turbo provides for its work. The website also provides Main Turbo's address, phone number, email, and fax number. Main Turbo's website does not allow its customers to "post" information or inquiries, does not allow customers to order service or parts or conduct any business, and does not allow customers to communicate with Main Turbo through the website. Instead, the website serves as an electronic billboard providing limited information for Internet users.

6. As part of its repair business, Main Turbo on occasion use parts originally manufactured by Kelly Aerospace, Inc. ("Kelly"). However, Main Turbo has no direct business or contractual relationship with Kelly. Instead, any Kelly parts used on repairs conducted by Main Turbo are ordered from Aviall, an aftermarket aircraft parts distributor based in Dallas, Texas.

7. With respect to the aircraft (Piper PA-32R-301T, N34MA) operated by David Pease at the time of the subject accident, Main Turbo received the turbocharger from Mr. Pease's plane in June 2005 from Air Tolin, an aircraft service and repair company located in Cincinnati, Ohio. Air Tolin requested that Main Turbo overhaul the airplane's turbocharger. Main Turbo performed the requested repair and shipped the turbocharger back to Air Tolin in Ohio.

8. Main Turbo services approximately 1,000 turbo chargers per year. According to our records, Main Turbo has received repair orders from only six Alabama customers since January 2005. None of these orders involved the turbocharger at issue in the Peases' lawsuit. Main Turbo charged approximately $18,765 for the orders it received from these Alabama customers since 2005. This amount represents less than one half of one (1) percent of Main Turbo's total revenues for the same time period.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Gary L. Main

STATE OF CALIFORNIA

COUNTY OF San Francisco

    I, the undersigned, a Notary Public in and for said County in said State, hereby certify that Gary L. Main, whose name is signed to the foregoing Affidavit, and who is known to me, was duly sworn and acknowledged before me on this day that, being informed of the contents above and the foregoing Affidavit, he executed the same voluntarily on the day the same bears date.

    Given under my hand and seal this 12 day of July, 2007.

                                        Notary Public

                                   My Commission Expires: 9-3-10

PATRICIA LEYES
COMM. # 1686320
NOTARY PUBLIC - CALIFORNIA
SAN FRANCISCO COUNTY
My Commission Expires Sept. 3, 2010