## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| DAVID H. PEASE, III and LISA PEASE, | ) | |
| | ) | CIVIL ACTION NO. |
| Plaintiffs, | ) | 2:07-CV-340-ID |
| | ) | |
| v. | ) | |
| | ) | **ORAL ARGUMENT** |
| MAIN TURBO SYSTEMS, et al., | ) | **REQUESTED** |
| | ) | |
| Defendants. | ) | |

## DEFENDANT MAIN TURBO SYSTEMS'
## RENEWED MOTION TO DISMISS

In this case, a company in Ohio shipped an airplane part to a company in California. The company in California refurbished the part and sent it back to Ohio. The part was then installed in a plane piloted by an Ohio resident who is the plaintiff. The plane crashed in Tennessee. The pilot, along with his wife, brought suit in Alabama. The only connections the California company has with Alabama are (1) before approximately March 2005 the California company purchased airplane parts from an Alabama company who is a defendant in this action; (2) since approximately March 2005 the California company has purchased parts from a Texas company that were manufactured by the defendant Alabama company; and (3) from 2002-2005, the California company has realized less than one half of one (1) percent of its annual revenues from sales to Alabama customers.[1]

---

[1]    Plaintiff noted in its brief requesting permission to conduct jurisdictional discovery that "only contacts occurring prior to the event causing the litigation may be considered in determining whether a trial court may exercise personal jurisdiction over a party consistent with the Due Process clause." Pl's Brief, p. 6, quoting Novak v. Benn, 896 So. 2d 513, 521 (Ala. Civ. App. 2004). Main Turbo cited caselaw in its August 10, 2007 brief indicating that the appropriate time period for measuring contacts for purposes of a

The only connection that this lawsuit has with Alabama is that one of the named defendants, Kelly Aerospace, Inc., is based in Montgomery, Alabama.  Jurisdiction as to one is not jurisdiction as to all, however, and plaintiffs have not sufficiently alleged, nor can they establish, that Main Turbo Systems, Inc. ("Main Turbo") has continuous and systematic contacts with Alabama to support exercise of personal jurisdiction over it. Main Turbo has no "presence" in Alabama, and asserting jurisdiction in this instance would offend "traditional notions of fair play and substantial justice."  Therefore, Main Turbo respectfully requests that the Court dismiss it from this action for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

I.    **Exercising Personal Jurisdiction Over Main Turbo is Unwarranted Because It Is Not Registered to Do Business In Alabama, Has No Employees, Property, Or Offices Here, and Does Not Advertise In Local Alabama Media Markets**

Main Turbo is a family-owned aircraft repair business located in Visalia, California.  Exhibit A, 7/12/07 Affidavit of Gary Main, ¶ 2.  It has only six employees and has been in business since 1988.  Id.  It was founded by Bill Main and his son Gary Main.  Id.

Main Turbo has no offices in Alabama, owns no property in Alabama, is not registered to do business in Alabama, and employs no workers in this state.  Id. at ¶ 3. Main Turbo does not advertise in any local Alabama media or advertising markets.  Id. at ¶ 4.  Main Turbo maintains an Internet website at the following address: http://www.mainturbo.com.  Id. at ¶ 5.  The website contains limited information about

---

personal jurisdiction analysis was from the time period before the Complaint was filed.  Under either measure, Main Turbo's contacts with Alabama are de minimis and not sufficient to subject it to personal jurisdiction.  The accident made the basis of this litigation occurred in June 2005.

repair services offered by Main Turbo, a troubleshooting guide, and information about the warranty that Main Turbo provides for its work. Id. Main Turbo's website does not allow its customers to "post" information or inquiries, does not allow customers to order service or parts, and does not allow customers to communicate with Main Turbo through the website. Id. The website is strictly informational in nature. Id.

As part of its repair business, Main Turbo sometimes uses parts originally manufactured by Kelly Aerospace, Inc. ("Kelly"). Id. at ¶ 6. Prior to approximately March 2005, Main Turbo purchased parts directly from Kelly, although Main Turbo is not aware of any written agreement or contract ever existing between Main Turbo and Kelly. Exhibit B, 4/18/08 Affidavit of Gary Main, ¶ 6. Since approximately March 2005, Main Turbo has purchased Kelly manufactured parts exclusively from Aviall, an aftermarket aircraft parts distributor based in Dallas, Texas. Id.

With respect to the aircraft operated by plaintiff David Pease at the time of the accident, Main Turbo received the turbocharger from Mr. Pease's plane in June 2005 from Air Tolin, an aircraft service and repair company located in Cincinnati, Ohio. Ex. A, ¶ 7. Air Tolin requested that Main Turbo overhaul the airplane's turbocharger. Id. Most of the parts used by Main Turbo for the overhaul were purchased from Aviall, a distributor in Dallas, Texas. Ex. B, ¶ 5. After performing the requested repair in California, Main Turbo shipped the turbocharger back to Air Tolin in Ohio. Ex. A, ¶ 7.

Main Turbo services approximately 1,000 turbochargers per year. Id. at ¶ 8. According to its records, Main Turbo has received repair orders from only seven different Alabama customers from 2002-2005. Ex. B, ¶ 3. Main Turbo charged approximately $16,235.55 for all of the orders it received from those Alabama customers during the four

years of 2002-2005. Id.  When taken by individual year, revenues from Alabama customers accounted for less than one half of one (1) percent of Main Turbo's revenues in 2002, 2003, 2004, and 2005.  Id. at ¶ 4.


II.    **Applicable Law**

Determining personal jurisdiction requires two inquiries.  The first step involves determining whether the forum state's long-arm statute provides a basis for jurisdiction. See  Cable/Home Communications Corp. v. Network Productions, Inc., 902 F.2d 829, 855 (11th Cir. 1990).  If it does, then the court must determine whether the exercise of personal jurisdiction over the defendants would offend "traditional notions of fair play and substantial justice" under the Due Process Clause.  Internat'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).   Alabama's long-arm statute provides for the exercise of personal jurisdiction as follows:

> An appropriate basis exists for service of process outside of this state upon a person or entity in any action in this state when the person or entity has such contacts with this state that the prosecution of the action against the person or entity in this state is not inconsistent with the constitution of this state or the Constitution of the United States . . . .

Ala. R. Civ. P. 4.2(b).  Because Alabama's nonresident personal jurisdiction is coextensive with the constitutional requirements of due process, the state law and due process analyses collapse into a single inquiry.  Butler v. Beer Across America, 83 F. Supp. 2d 1261, 1266 (N.D. Ala. 2000).

"The Due Process Clause of the Fourteenth Amendment permits a forum state to subject a non-resident defendant to its courts only when that defendant has sufficient 'minimum contacts' with the forum state."  Elliot v. Van Kleef, 830 So. 2d 726, 731 (Ala.

2002) (citing International Shoe Co. v. Washington, 326 U.S. 310 (1945)).  "The critical question with regard to the non-resident defendant's contacts is whether the contacts are such that the nonresident defendant 'should reasonably anticipate being haled into court' in the forum state." Id. (citing Burger King Corp. v. Rudzewicz, 471 U.S.  462, 473 (1985)).

There are two types of personal jurisdiction:  specific and general.  Specific personal jurisdiction is founded on a party's contacts with the forum state that are related to the cause of action.  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 & n. 8 (1984).  General personal jurisdiction arises from a party's contacts with the forum state that are unrelated to the litigation.  Id. at n. 9.  "The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant the forum state."  Consolidated Development Corp. v. Sherritt, Inc., 216 F.3d 1286, 1292 (11th Cir. 2000); General Cigar Holdings, Inc. v. Altadis, 205 F. Supp. 2d 1335 (S.D. Fla. 2002) (to justify exercise of general jurisdiction, contacts must be "especially pervasive and substantial").

In the case of either general or specific personal jurisdiction "the substantial connection between the defendant and the forum state necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum state." Elliot v. Van Kleef, 830 So. 2d 726, 731 (Ala. 2002) (emphasis removed) (citing Asahi Metal Indus. Co. v. Superior Court of California, 480 U.S. 102, 112 (1987)).  "Only after such minimum contacts have been established does a court then consider those contacts in the light of other factors—such as the burden on the defendant

of litigating in the forum state and the forum state's interest in adjudicating the dispute . .

. ." Id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985). The

plaintiff carries the burden of proving the trial court's personal jurisdiction over the

defendant. Ex parte Covington Pike Dodge, Inc., 904 So.2d 226, 229 (Ala. 2004).


**III.     Main Turbo's De Minimis Contacts with Alabama are Not Sufficient to
        Exercise General Jurisdiction Over Main Turbo and Do Not Justify Haling
        Main Turbo into Court in Alabama to Defend Against this Action**

It is undisputed that Main Turbo had no contacts with Alabama that relate to this

cause of action.  The plaintiffs are residents of Ohio; the turbocharger at issue was sent to

Main Turbo for repair by one of its customers, Airtolin, which is based in Cincinnati,

Ohio; the alleged faulty repair of plaintiffs' turbocharger by Main Turbo was performed

in California; the turbocharger was returned to Airtolin in Ohio; and the crash in question

occurred in Tennessee.  Complaint, ¶ 7, 15, 18.  Moreover, nearly all the parts Main

Turbo used in its refurbishment of the subject turbocharger were purchased by Main

Turbo from the Texas-based Avial aircraft parts supplier.  Therefore, there is no basis for

specific jurisdiction as to Main Turbo in this suit.  The only remaining inquiry is whether

Main Turbo is subject to general jurisdiction in Alabama.

Under no analysis can Main Turbo be said to have "continuous and systematic

general business contacts" with Alabama to warrant the exercise of personal jurisdiction

over it.  Main Turbo does not now and never has had any office, employee, property, or

registered agent in Alabama, nor is it registered to do business in Alabama.  The

overwhelming body of caselaw from the federal courts indicates that general jurisdiction

will not be found when a company lacks a physical "presence" in a state in this way.[2]

Similarly, general jurisdiction is not exercised over a company where, as here, it does not

specifically target the state for advertising[3] and the company maintains an "information

---

[2]     Butler v. Beer Across America, 83 F. Supp. 2d 1261, 1266 (N. D. Ala. 2000) (finding no general personal jurisdiction where nonresident defendant was not registered to do business in Alabama, maintained no offices or agents in Alabama, did not own property in Alabama, and no key personnel had ever visited state); Thomas v. Mitsubishi Motor North America, 436 F. Supp. 2d 1250, 1255 (M.D. Ala. 2006) (finding no general jurisdiction where defendant did not have offices, employees, agents, or property in Alabama); Norben Import Corp. v. Metropolitan Plant & Flower Corp., (S.D. N.Y. 2004) 2004 WL 2378295 at *2 (court cannot exercise general jurisdiction when defendant has no officer, bank account, property, or employees in New York); Gardemal v. Westin Hotel Co., 186 F.3d 588, 596 (5th Cir. 1999) (no general jurisdiction over Mexican corporation managing hotel where Texas resident drowned when no indication as to extent, duration, or frequency of its business dealings in Texas, and record indicated no employees, office, or address in Texas); First Trust Nat. Ass'n v. Jones, Walker, et al., 996 F. Supp. 585, 589 (S.D. Miss. 1998) (no general jurisdiction over defendant law firm in Mississippi where firm had no offices there, did not own property there, was not qualified to do business there, had no agent for service of process there, and had never advertised or solicited business there).

[3]     Main Turbo advertises in Trade-A-Plane, a national magazine advertising aviation parts, aircraft sales, used aircraft and aircraft dealers.  However, this is not enough to exercise general jurisdiction over Main Turbo.  See Elliot v. Van Kleep, 830 So. 2d 726 (Ala. 2002) (holding that law firm's listing of services in nationally circulated Martindale Hubbell directory was not sufficient to create in personam jurisdiction because otherwise every attorney listed in the directory would be subject to nationwide service of process); Seymour By and Through Seymour v. Bell Helmet Corp., 624 F. Supp. 146, 149 (M.D. Ala. 1985) (finding that national advertising campaign could not establish continuous and systematic contacts with Alabama merely because it reached the state); Dluhos v. Strasberg, (D. N.J. 2005) WL 1683732 at *6-7 (advertising in magazines that are distributed through the forum state and enrolling students from the forum state are not enough to support general jurisdiction); Hlavac v. DGC Properties Co., (E.D. Pa. 2005) 2005 WL 839158 at *4 (although advertising done in the forum state sometimes can serve as a basis for general jurisdiction, it could not be so when the advertisements were distributed by a third party instead of the defendant itself); Gray v. Lewis & Clark Expeditions, Inc.,12 F.Supp. 2d 993, 997 (D. Neb. 1998) (advertising in national publications and soliciting business from the public at large is not enough to create a basis for general jurisdiction under the Due Process Clause).

only" website that cannot be used to conduct business.[4]  Main Turbo derived less than

one half of one percent of its revenues from seven Alabama customers in the three years

prior to this accident and during the year of the accident.[5]  This type of sporadic, minimal

sales volume from so few Alabama customers over an extended period further

demonstrates the de minimis nature of the contacts the company has with Alabama.[6]

---

[4]    Santana Prods., Inv. V. Bobrick Washroom Equip., 14 F. Supp. 2d 710, 712-714
(M.D. Pa. 1998) (neither transaction of business in forum state as agent for alleged co-
conspirator, appearance in national publication, nor merely informational webpage
provided sufficient grounds upon which to base general jurisdiction); Accu-Sport Int'l
Inc. v. Swing Dynamics, 367 F. Supp. 2d 923, 928-29 (M.D.N.C. 2005) (fact that
defendant published advertisements in nationwide magazines and maintained an
informational website with minimal interactivity were equally insufficient for general
jurisdiction); R&B Falcon Drilling (Int'l & Deepwater), Inc. v. Noble Denton Group, 91
Fed. Appx. 317, 321 (5th Cir. 2005) (maintenance of passive website for advertising does
not subject foreign company to general jurisdiction absent additional contacts); InfoSys
Inc. v. Billingnetwork.com, Inc., 2003 WL 22012687 at *3-4 (N.D. Ill. 2003) (national
advertisements, including those on Internet, were insufficient to subject defendant to
jurisdiction in Illinois; there must be evidence that defendant intended its advertisements
to reach particular state).

[5]    In his 7/31/07 brief, plaintiff cites the case of Ex Parte Pope Chevrolet, Inc., 555
So.2d 109 (Ala. 1989), for the proposition that the Alabama Supreme Court found
sufficient contacts to assert jurisdiction over a foreign car dealership even though only
one-tenth of one percent of its sales were derived from Alabama.  What plaintiff leaves
out, however, and what distinguishes that case from the present one, is that the plaintiff in
that case, unlike here, was an Alabama resident.  Furthermore, the defendant in Pope was
a Georgia large volume car dealer that sold over $100,000 per year of cars to Alabama
residents; advertised in the Atlanta Journal Constitution (a regional newspaper); and had
its principal office less than 100 miles from the Calhoun County, Alabama courthouse in
which the case was pending.  Id at 113-14.  Clearly, the facts of Pope are not even
remotely similar to the present situation, and it is therefore inapplicable.

[6]    Harlow v. Children's Hosp., 432 F. 3d 50, 66 (1st Cir. 2005) (federal district court
did not have general jurisdiction over Massachusetts hospital where Maine residents
accounted for only .5 percent of its revenues); Kimball v. Countrywide Merchant Servs.,
2005 WL 318752 at *3 (E.D. Pa. 2005) (court declined to find general jurisdiction when
defendant company had five or fewer sales in forum state in last seven years representing
less than one percent of its annual sales); Accu-Sport Int'l Inc. v. Swing Dynamics, Inc.,
367 F. Supp. 923, 928 (M.D. N.C. 2005) (single sale by defendant's predecessor to forum
state was not sufficient for general jurisdiction where sale accounted for only 1.3% of

The above facts and current case law simply refute plaintiffs' conclusory statement in the Complaint that "Defendant, Main Turbo Systems, Inc., does substantial and systematic business in the State of Alabama by virtue of the repairs it performs on Kelly Aerospace, Inc., turbochargers and turbocharger component parts." Complaint, ¶ 6. In addition to being incorrect, plaintiffs' argument misapplies the jurisdictional test. The factors to consider in a general or specific jurisdiction analysis are not what contact a company may have had with a product that originated in a state, but whether the company has "purposefully avail[ed] itself of the privilege of conducting activities *within* the forum State, thus invoking the benefits and protections of its laws." Butler v. Beer Across America, 83 F. Supp. 2d 1261, 1265 (N.D. Ala. 2000) (emphasis added) (citing Hanson v. Denckla, 357 U.S. 235, 253 (1958)). No evidence of such purposeful availment exists here.

The de minimis contacts that Main Turbo has had with Alabama must also be viewed "in the light of other factors—such as the burden on the defendant of litigating in the forum state and the forum state's interest in adjudicating the dispute . . . ." Elliott v. Van Kleef, 830 So. 2d 726, 731 (Ala. 2002) (citing Burger King). Here, plaintiff is asking this Court to require a small company with only six employees and located in

---

defendant's annual sales and was de minimis); Adell Corp. v. Elco Textron, Inc., 51 F. Supp. 2d 752, 756 (N.D. Tex. 1999) (no general jurisdiction when sale of parts to Texas was less than one percent of total sales); Haas v. A.M. King Indus., Inc., 28 F. Supp. 2d 644, 650 (D. Utah 1998) (general jurisdiction denied when contacts with forum state amounted to advertisements, direct mailings, maintaining a website, and less than 1% in total sales); Stairmaster Sports/Medical Products, Inc. v. Pacific Fitness Corp., 916 F. Supp. 1049, 1052-53 (W.D. Wash. 1994) (holding that independent distributor's sales of unrelated products in the forum state, that amounted to approximately three percent of the defendant's sales volume, were insufficient to establish continuous and systematic contacts).

central California to defend itself in an Alabama lawsuit that has nothing to do with this state, other than the fact that one of the defendants is located here. Plaintiff cannot justify the undue burden this would cause Main Turbo. Nor can plaintiff satisfy the Court that Alabama even has an interest in this dispute. Given that plaintiff is not an Alabama resident and the subject accident did not occur here, it is hard to imagine what real interest Alabama might have in this lawsuit.

Finally, plaintiff has argued in a previous brief[7] that Main Turbo is subject to personal jurisdiction in Alabama because, in the past, Main Turbo has purchased aircraft parts directly from defendant Kelly. The caselaw simply does not support this contention. In <u>Helicopteros Nacionales De Colombia</u>, 466 U.S. 408, 418 (1984), the U.S. Supreme Court held that nonresident defendant Helicol was not subject to personal jurisdiction in Texas for a suit arising out of a helicopter crash in Peru even though Helicol had had other contacts with Texas, including purchase of nearly 80% of its fleet of helicopters, spare parts and accessories from Bell Helicopter in Fort Worth.

The Supreme Court held that "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." <u>Id.</u> In reaching this conclusion, the <u>Helicopteros</u> Court relied on <u>Rosenberg Bros & Co. v. Curtis Brown Co.</u>, 260 U.S. 516 (1923), which held that a small Oklahoma retailer who purchased a large portion of its merchandise from New York wholesalers which was in turn sold in its Tulsa store "would not warrant the inference that the corporation was present within the jurisdiction of [New York]." Lower federal courts have followed the

---

[7] See page 4 of Plaintiff's Request for Permission to Conduct Limited Jurisdictional Discovery, etc. filed on July 31, 2007.

principle first enunciated in <u>Rosenberg Brothers</u> and reaffirmed in <u>Helicopteros</u>.  <u>See</u>

<u>Submersible Systems, Inc. v. Perforadora Central</u>, S.A., 249 F. 3d 413 (5th Cir. 2001)

(holding that non-resident defendant who had purchased spare parts and vessels in the

United States and had called on U.S. ports was not subject to personal jurisdiction in U.S.

courts because it conducted no operations in the U.S., maintained no office in the U.S.,

and did not own any real or personal property in the U.S.); <u>Fix My PC v. N.F.N. Assoc.,</u>

<u>Inc.</u>, 48 F. Supp. 2d 640 (N.D. Tex. 1999) (rejecting plaintiff's argument that nonresident

corporation's purchases of parts from a Texas company was sufficient for Texas court to

exercise jurisdiction over defendant where purchases at issue were not related to

plaintiff's cause of action").

 Pursuant to <u>Rosenberg Brothers</u>, <u>Helicopteros</u> and their progeny, Main Turbo's

past purchase of parts from Alabama-based Kelly Aerospace is insufficient to subject

Main Turbo to jurisdiction in this state because it is undisputed that the parts Main Turbo

used to overhaul Mr. Pease's aircraft were not purchased from Kelly Aerospace.   (Main

Affidavit, ¶ 5).

## IV.  <u>Conclusion</u>

 In summary, plaintiffs cannot show, as they must, that Main Turbo's de minimis

contacts with Alabama are enough to warrant imposition of general personal jurisdiction.

The lack of "presence" by Main Turbo in Alabama and its sporadic and attenuated

business contacts within the state are simply insufficient to justify haling a small, far

away company like Main Turbo into an Alabama court to defend this lawsuit.  Therefore,

Main Turbo respectfully requests that the Court dismiss it from this lawsuit for lack of

personal jurisdiction.

_One of the Attorneys for Defendant_
_Main Turbo Systems, Inc._

OF COUNSEL:
Jackson R. Sharman III (SHARJ6416)
J. Chandler Bailey (BAILC4526)
Sanford G. Hooper (HOOPS7271)
LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, Alabama  35203-3200
(205) 581-0700
(205) 581-0799 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of April, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Thomas R. Edwards, Esq.
Thomas Edwards, P.C.
8244 Old Federal Road
Montgomery, AL 36117
tedwards2@mindspring.com

Jerome L. Skinner, Esq.
Nolan Law Group
3074 Madison Road
Cincinnati, OH 45209
jls@nolan-law.com

Charles B. Paterson, Esq.
Kelly F. Pate, Esq.
Balch & Bingham LLP
Post Office Box 78
Montgomery, Alabama 36101-0078
cpaterson@balch.com
kpate@balch.com

Christopher S. Rogers, Esq.
J. Patrick Strubel, Esq.
Huie Fernambucq Stewart, LLP
Three Protective Center
2801 Highway 280 South, Suite 200
Birmingham, Alabama 35223-2484
csr@hfsllp.com
jps@hfsllp.com

OF COUNSEL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DAVID H. PEASE, III and LISA PEASE,    )
                                       )
          Plaintiffs,                  )        CIVIL ACTION NO.
                                       )
v.                                     )        2:07-CV-340-ID
                                       )
MAIN TURBO SYSTEMS, et al.,            )
                                       )
          Defendants.                  )

## AFFIDAVIT OF GARY L. MAIN

STATE OF CALIFORNIA         )
                            )
COUNTY OF _____     )

Before me, the undersigned notary public, personally appeared Gary L. Main,

who being known to me, under oath did state as follows:

1.    My name is Gary Main. I am over the age of nineteen years old and have
      personal knowledge about the matters stated herein.

2.    I am the President of Main Turbo Systems, Inc. ("Main Turbo"). Main Turbo
      was started by my father, Bill Main, and me in 1988. Main Turbo is still
      family-owned and has only six employees at its only office in Visalia,
      California. Main Turbo is in the business of repairing and overhauling
      turbochargers that are used on turbo propeller aircraft.

3.    Main Turbo does not now maintain and never has maintained any offices in
      Alabama. Likewise, Main Turbo has never had any employees in Alabama,
      nor has it ever registered to do business in Alabama. Our company has never
      had any registered agents in Alabama. None of Main Turbo's current
      employees have ever visited Alabama. Main Turbo has never owned property
      in Alabama.

4.    Main Turbo does not advertise in any local Alabama media or advertising
      markets. Main Turbo places occasional advertisements in Trade-A-Plane, a
      national magazine advertising aviation parts, aircraft sales, used aircraft and
      aircraft dealers.

5.  Main Turbo maintains an Internet website at the following address: http://www.mainturbo.com. The website contains limited information about repair services offered by Main Turbo, a troubleshooting guide, and information about the warranty that Main Turbo provides for its work. The website also provides Main Turbo's address, phone number, email, and fax number. Main Turbo's website does not allow its customers to "post" information or inquiries, does not allow customers to order service or parts or conduct any business, and does not allow customers to communicate with Main Turbo through the website. Instead, the website serves as an electronic billboard providing limited information for Internet users.

6.  As part of its repair business, Main Turbo on occasion use parts originally manufactured by Kelly Aerospace, Inc. ("Kelly"). However, Main Turbo has no direct business or contractual relationship with Kelly. Instead, any Kelly parts used on repairs conducted by Main Turbo are ordered from Aviall, an aftermarket aircraft parts distributor based in Dallas, Texas.

7.  With respect to the aircraft (Piper PA-32R-301T, N34MA) operated by David Pease at the time of the subject accident, Main Turbo received the turbocharger from Mr. Pease's plane in June 2005 from Air Tolin, an aircraft service and repair company located in Cincinnati, Ohio. Air Tolin requested that Main Turbo overhaul the airplane's turbocharger. Main Turbo performed the requested repair and shipped the turbocharger back to Air Tolin in Ohio.

8.  Main Turbo services approximately 1,000 turbo chargers per year. According to our records, Main Turbo has received repair orders from only six Alabama customers since January 2005. None of these orders involved the turbocharger at issue in the Peases' lawsuit. Main Turbo charged approximately $18,765 for the orders it received from these Alabama customers since 2005. This amount represents less than one half of one (1) percent of Main Turbo's total revenues for the same time period.

FURTHER AFFIANT SAYETH NAUGHT.

**Gary L. Main**

STATE OF CALIFORNIA

COUNTY OF ~~San, Francisco~~

I, the undersigned, a Notary Public in and for said County in said State, hereby certify that Gary L. Main, whose name is signed to the foregoing Affidavit, and who is known to me, was duly sworn and acknowledged before me on this day that, being informed of the contents above and the foregoing Affidavit, he executed the same voluntarily on the day the same bears date.

Given under my hand and seal this 12 day of July , 2007.

_____
Notary Public

My Commission Expires: 9·3·10

PATRICIA LEYES
COMM. # 1686320
NOTARY PUBLIC - CALIFORNIA
SAN FRANCISCO COUNTY
My Commission Expires Sept. 3, 2010
GMN1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

DAVID H. PEASE, III and LISA PEASE,        )
                                            )
     Plaintiffs,                         )        CIVIL ACTION NO.
                                            )
v.                                          )        2:07-CV-340-ID
                                            )
MAIN TURBO SYSTEMS, et al.,                 )
                                            )
     Defendants.                          )

### AFFIDAVIT OF GARY L. MAIN

STATE OF CALIFORNIA              )
                                 )
COUNTY OF SAN FRANCISCO          )

     Before me, the undersigned notary public, personally appeared Gary L. Main, who being known to me, under oath did state as follows:

1.    My name is Gary L. Main. I am over the age of nineteen years old and have personal knowledge about the matters stated herein.

2.    I am the President of Main Turbo Systems, Inc. ("Main Turbo").

3.    I have reviewed Main Turbo's invoices for sales and services to Alabama customers for the years 2002-2005. Based on our records, we provided services to seven different Alabama customers during this four year time period. The invoice totals for services provided to Alabama customers by year are as follows:

        2002 - $4,730.07
        2003 - $5,109.12
        2004 - $2,436.39
        2005 - $3,959.97

        $16,235.55

4.    The above sales to Alabama customers amounted to less than one half of one percent of Main Turbo's total annual revenues for each of the years cited above.



5.   I have also reviewed Main Turbo's records for services we performed in June 2005 on the turbocharger allegedly installed in Mr. Pease's aircraft. Those records are attached as Exhibit 1 to this affidavit. Main Turbo purchased most of the parts used to overhaul Mr. Pease's turbocharger from Aviall, a Texas-based distributor of aviation parts. I can confirm this because of the internal parts numbering system we use at Main Turbo. Parts that were purchased from Aviall are coded with the prefix "6 – ." In addition, the "bearing housing" part referenced in Exhibit 1 was a refurbished part. Although I am unsure of the exact origin of the part labeled "nut," it was not purchased from Kelly Aerospace.

6.   Before approximately March 2005, Main Turbo purchased Kelly manufactured parts from Kelly Aerospace. I am not aware of any written agreement or contract ever existing between Main Turbo and Kelly. Since approximately March 2005, Main Turbo has purchased Kelly manufactured parts exclusively from Aviall.

7.   Finally, I previously signed an affidavit relating to Mr. Pease's lawsuit on July 12, 2007. Since that time, in approximately October of 2007, I have traveled to Alabama, where along with other owners of repair shops, I met with Kelly Aerospace officials. We discussed issues in the turbocharger industry and parts distribution. Other than this clarification, all other statements in my previous affidavit are still accurate.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Gary L. Main

STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

I, the undersigned, a Notary Public in and for said County in said State, hereby certify that Gary L. Main, whose name is signed to the foregoing Affidavit, and who is known to me, was duly sworn and acknowledged before me on this day that, being informed of the contents above and the foregoing Affidavit, he executed the same voluntarily on the day the same bears date.

Given under my hand and seal this 18th day of April, 2008.

_____
Notary Public

MICHAEL PAUL SMAGLIK
COMM. # 1511484
NOTARY PUBLIC-CALIFORNIA
TULARE COUNTY
COMM. EXP. SEPT. 4, 2008

My Commission Expires: Sept 4 2008

**MAIN TURBO SYSTEMS, INC.**

# Invoice

**234 COTTA COURT; VISALIA, CA. 93292**
**559-635-3322 / 800-847-8815**
**FAX: 559-627-1960**
**Repair Station# MAMR190K**

| Date | Invoice # |
|------|-----------|
| 6/2/2005 | 24182 |

**PAID**

| Bill To | Ship To |
|---------|---------|
| AIRTOLIN INC.<br>4730 AIRPORT ROAD<br>CINCINNATI, OH. 45226<br>513-871-8235<br>ID# 4527 | AIRTOLIN INC.<br>4730 AIRPORT ROAD<br>CINCINNATI, OH. 45226<br>513-871-8235<br>ID# 4527 |

| Acct. Type | Terms | Ship Date | Ship Via | P.O.# | M.O.P. |
|------------|-------|-----------|----------|-------|--------|
| PREPAID | CREDIT CARD | 6/2/2005 | UPS RED | | VISA C/C |

| Item | Description | Qty | Rate | Amount |
|------|-------------|-----|------|--------|
| | W/O# 32557 | | | |
| TAO413 [OVH... | [OVHL] TURBO P/N 46C19836D , S/N  BCN24617<br>PARTS $829.00 , LABOR $200.00 | 1 | 1,029.00 | 1,029.00 |
| FREIGHT | SENDING UPS RED OVERNIGHT SERVICE<br>TRACKING# 1Z93X9060140014491 | 1 | 83.32 | 83.32 |
| MEMO | MIKE WELLS,<br>THANK YOU FOR YOUR BUSINESS! | | | |

Visit our web site;  www.mainturbo.com
Email Address: maints@lightspeed.net

**EXHIBIT**
**1**

| Sales Tax  (0.0%) | $0.00 |
|-------------------|-------|
| **Total** | **$1,112.32** |

Main Turbo 0034

Repair Station # MAMR190K

**MAIN TURBO SYSTEMS**
234 Cotta Ct.
Visalia, CA 93292
1-800-847-8815
1-559-635-3322

CUSTOMER Air Colin Inc.
4730 Airport Rd.
Cincinnati, OH 45226

WORK ORDER # 32557

DATE REQ. 6-02-05

PHONE 513-871-8235
Fx 513-871-1843

P/N ALL9836D   S/N RC039617

MGF. AR

INIT. INSP. [signature]

PRELIM INSP. [signature]

HIDDEN DAM INSP. [signature]

FITTINGS

FINAL INSP. [signature]

BRACKET

PARTS $29200

**TEAR DOWN REPORT**

TURBO CHARGER SNA

| | OK | |
|---|---|---|
| TURBINE HSG. | ☐ | ☐ |
| TURBINE WHEEL | ☐ | ☐ |
| HS. TSHIELD | ☐ | ☐ |
| BEARING HSG | ☐ | ☐ |

BACK PLATE

RPO☐

COMMENTS T-wheel Bent

NORMAL BEARING WEAR. TURB SHOT PEEN?

TURBINE WHL. ✓ JOURNALS 3797  BAL NEW

COMP WHL ✓  BAL NEW

NDT

BEARING HSG. ✓ JOURNALS 6223  SEAL .710

COMP HSG. ✓

TURBINE HSG. ✓

HEAT SHIELD ✓

SEAL PLATE ✓

BORE SIZE .500 I

| | INSP. INIT. |
|---|---|
| | [signature] |

OVERHAULED PER TP20A0128 & TP30A4002
TCSB.M81-4R1-HEATSHIELD INSP
TCSB.M81-16 ANTI-ROTATING PIN

PARTS INSTALLED PER TP30A4002
AND ALL SERVICE BULLETINS AND AD'S

AMB. TEMP.

AMB. IN.
HG. ABS.

P1

P2 ___ LOW ___ HIGH

P3 ___ LOW ___ HIGH

SEAT LEAKAGE

FRICTION TEST

ALPHA ANGLE

**CONTROLLER CAL.**

CLOSED
OPEN STOP

INSP. INIT.

Main Turbo 0035

MAIN TURBO SYSTEMS, INC.

DATE: 12-13-2003
SECTION: IX
PAGE: XI

FORMS
INSPECTION TURBOCHARGER CONTINUITY FORM

CUSTOMER: Airtolin                                          DATE: 6-07-05

PART NUMBER: 46C19836D          SERIAL: BCN24617

PART 121 or 135 CUSTOMER: YES_____    NO __✗__

SPECIAL INSTURCTIONS PER STANDARD PURCHASE ORDER: YES_____ NO __✗__ _____
Per Mike Wells

TEAR DOWN AND GENERAL PARTS CLEAN: _____

PRELIMINARY INSPECTION: _____                    AS PER RUBBER STAMP.

* IN PROCESS: _____

COMPRESSOR HOUSING: C. I. R          RIGHT P/N: 442203-23

CENTER HOUSING: See Brown Tag   ✓

BORE ID: .6333 / .6333   ✓      SEAL ID: .710   ✓

TURBINE HOUSING: C. I. R   ✓      "A/R": 1.30   ✓

V BAND COUPLING: NA   ✓

BACKPLATE ASSY: C. I. R.   ✓      BORE ID: .5001   ✓

WHEEL SHROUD: New   ✓      HEIGHT: NA

THRUST COLLAR: C.I.R   ✓      THRUST SPACER: C.I.R.   ✓

COMPRESSOR WHEEL / TURBINE WHEEL: CLEANED, INSPECTED, BALANCED AS PER BLUE CONTINUITY TAG

*HIDDEN DAMAGE: _____                    T. 3997 NEW
                                           C. NEW
FINAL WASH: _____

FINAL PARTS INSPECTION: PRE ASSEMBLY: Day Ma

ASSEMBLY: _____

SHAFT NUT TORQUE: _____    2ⁿᵈ: D Mai.

BEARING HOUSING LOCKS: Nylock _____    LOCKPLATE 2ⁿᵈ: Nylock

SPIN CHECK AND CLEARANCE: _____ Day Ma

FINAL INSPECTION: _____ Day Ma

Main Turbo 0036



ALLIEDSIGNAL TURBOCHARGING SYSTEMS
P/N: 444205-0001    QTY: 1
DESC: NUT
DATE: 04-24-1998

FAA-PMA LOT# 1799346

REPLACEMENT
PARTS

**KELLY
AEROSPACE**

PN: 446352-0003
*446352:0003*
COMP WHEEL QTY:0001
Kelly 5-3-05 FAA/PMA MK
*6-460705-2569324*
*FEB05 INSTALLATION ELIGIBILITY
FOR INSTALLATION MANUAL 4-2-05 M770490
SEE CURRENT AID MANUAL

Main Turbo 0037

| Part# | | Description | Invoice |
|---|---|---|---|
| 400424-0000 | (1) | Seal ring | 6-3869020-2221277 |
| 400568-0000 | (4) | Ret. Ring | 6-3969873-2198043 |
| 400573-0008 | (6) | Bolt | 6-4300856-2429625 |
| 400705-0000 | (2) | Anti-rotation pin | N/A |
| 400834-0202 | (4) | Bolt | 6-3988755-2209606 |
| 400975-0303 | (6) | Bolt | 6-3508892-1938721 |
| 403818-0009 | (1) | Piston ring | 6-3988755-2209606 |
| 406902-0000 | (2) | Journal bearing | 6-3988755-2210360 |
| 406908-0002 | (3) | Clamp | 6-3988755-2209606 |
| 406909-0000 | (3) | Lock plate | 6-2105254-1197538 |
| 408049-0009 | (1) | Piston ring | 6-3988755-2209606 |
| 410952-0000 | (1) | Wheel shroud | 6-3988755-2239650 |
| 444205-0001 | (1) | Lock nut | Blank-have pkg in parts bag |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | Misc. T-4 Parts | |

Main Turbo 0038