## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| **DAVID H. PEASE III, et al.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) **CIV. ACT. NO. 2:07cv340-ID** |
| **v.** | ) |
| | ) |
| **KELLY AEROSPACE, INC., d/b/a KELLY** | ) |
| **AEROSPACE POWER SYSTEMS, INC.,** | ) |
| **et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION AND ORDER

## I.  INTRODUCTION

This personal-injury and products-liability diversity suit is before the court on

Defendant Main Turbo Systems' ("Main Turbo") Renewed Motion to Dismiss (Doc. No.

28), filed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.  By way of

brief factual introduction as to the personal jurisdiction dispute, Main Turbo, a California

company, received an airplane turbocharger from an Ohio company in June 2005.  Main

Turbo refurbished the part and sent it back to Ohio.  The part was then installed in a

plane piloted by Plaintiff David H. Pease III, who is an Ohio resident.  The plane crashed

in Tennessee, injuring Mr. Pease.  Mr. Pease, along with his wife (Lisa Pease), brought

this lawsuit against Main Turbo and others,[1] but Main Turbo argues that personal

jurisdiction over it is lacking and that, therefore, the court must dismiss it as a defendant

---

[1] The court refers to Plaintiffs individually as "Mr. Pease" and "Mrs. Pease" and collectively as "Plaintiffs."

in this case.  (Main Turbo Mot. (Doc. No. 28).)  Plaintiffs filed a Response in Opposition

to the Renewed Motion, arguing that personal jurisdiction over Main Turbo is supported

by both specific and general jurisdiction.  (Pls. Resp. at 2 (Doc. No. 31).)  Main Turbo

filed a Reply.  (Main Turbo Reply (Doc. No. 32).)  After careful consideration of the

arguments of counsel, the relevant law and the record as a whole, and finding oral

argument to be unnecessary, the court concludes that Main Turbo's Rule 12(b)(2)

Renewed Motion to Dismiss is due to be granted.

## II.  JURISDICTION

The court exercises subject matter jurisdiction over this action pursuant to 28

U.S.C. § 1332 (diversity jurisdiction).  Personal jurisdiction is disputed by Main Turbo.

## III.  STANDARD OF REVIEW

The plaintiff bears the burden of establishing personal jurisdiction over a non-

resident defendant.  See S & Davis Int'l, Inc. v. Yemen, 218 F.3d 1292, 1303 (11th Cir.

2000).  When the issue of personal jurisdiction is decided on the briefs and

accompanying evidence, but without an evidentiary hearing, a plaintiff satisfies his or her

burden by demonstrating a "prima facie case of jurisdiction"; proof by a preponderance of

the evidence is not required.[2]  Francosteel Corp. v. M/V Charm, 19 F.3d 624, 626 (11th

Cir. 1994); Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990).  A plaintiff establishes

---

[2] No party has requested an evidentiary hearing, and exercising its discretion, the court declines to conduct one.

a prima facie case by submitting evidence sufficient to defeat a motion for judgment as a matter of law.  S. Ala. Pigs, LLC v. Farmer Feeders, Inc., 305 F. Supp.2d 1252, 1257 (M.D. Ala. 2004) (citing Perry v. Household Retail Servs., 953 F. Supp. 1378, 1380-81 (M.D. Ala. 1996) (DeMent, J.)).  Consonant with that standard of review, the court construes the allegations in the complaint as true if they are uncontroverted by affidavits or deposition testimony.  See Bracewell v. Nicholson Air Services, Inc., 748 F.2d 1499, 1504 (11th Cir. 1984).  The Eleventh Circuit has explained that, "[i]f a plaintiff pleads sufficient material facts to establish a basis for personal jurisdiction and a defendant then submits affidavits controverting those allegations, 'the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction[,] unless those affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction.'"  Whitney Info. Network, Inc. v. Xcentric Ventures, LLC, 199 Fed. Appx. 738, 741 (11th Cir. 2006) (quoting Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002)).  If the evidence conflicts, the court makes reasonable inferences in favor of the plaintiff, particularly when the jurisdictional question is seemingly intertwined with the merits of the case.  See Delong Equip. Co. v. Washington Mills Abrasive Co., 840 F.2d 843, 845 (11th Cir. 1988).

## IV.  FACTS AND PROCEDURAL HISTORY

The following facts, extracted from the complaint and the evidence, construe all reasonable inferences in favor of Main Turbo.  Main Turbo, a family-owned aircraft repair business, is a California corporation with its principal and only place of business in

Visalia, California.  (Gary Main Aff. I ¶ 2.)  It has six employees and has been in

business since 1988.  (Id.)  Main Turbo's founders are Billy Main and his son Gary Main,

who is the president.  (Id.)  One of the specialties of the business is the repair and

overhaul of turbochargers used on turbo propeller aircraft.  (Id.)

On June 3, 2005, Mr. Pease took his Piper airplane to Air Tolin, Inc., which

operates a repair station at an airport in Cincinnati, Ohio, for maintenance and repair of

the engine turbocharger.  (Compl. ¶ 10.)  Air Tolin, Inc., sent Main Turbo the

turbocharger from Mr. Pease's plane, requesting that Main Turbo "overhaul" it.  (Main

Aff. I ¶ 7.)  Most of the parts used by Main Turbo for the overhaul were purchased from

Aviall, a distributor in Dallas, Texas.  (Main Aff. II ¶ 5.)  After performing the requested

repair in California, Main Turbo shipped the turbocharger back to Air Tolin, Inc., in Ohio

(Main Aff. I ¶ 7), and Air Tolin reinstalled the turbocharger on Mr. Pease's aircraft.

(Compl. ¶ 18.)

Thereafter, on June 5, 2005, Mr. Pease was flying his plane when the engine

failed, causing the plane to crash in Tennessee.  (Id. ¶¶ 14, 18.)  Mr. Pease survived, but

not without suffering "serious, permanent and disabling injuries."  (Id. ¶ 16.)

On April 20, 2007, Mr. Pease and his wife, who are citizens of Ohio, brought this

action against three defendants, including Main Turbo, which, as stated, performed

repairs on the subject turbocharger.  (Id. ¶¶ 6-7.)  The turbocharger was manufactured by

Kelly Aerospace, Inc. ("Kelly"), an Alabama corporation.  (Id. ¶ 1.)  Kelly also is a

defendant in this action.  (Id. ¶ 2.)  The third defendant, Lycoming Engines, a

4

Pennsylvania corporation, designed and manufactured the engine in Mr. Pease's plane.

(Id. ¶¶ 3-5.)

Mr. Pease's claims against Main Turbo are for negligence and wantonness stemming from Main Turbo's "overhaul" of the turbocharger. (Id. ¶¶ 17-20, 34-37.) Mrs. Pease's claim is for loss of consortium. (Id. ¶¶ 37-39.) As to the court's personal jurisdiction over Main Turbo, Plaintiffs allege that Main Turbo "does substantial and systematic business in the State of Alabama by virtue of the repairs it performs on Kelly Aerospace, Inc., turbochargers and turbocharger component parts." (Id. ¶ 6. )

Main Turbo filed its present Renewed Motion, urging dismissal for lack of personal jurisdiction. The motion is titled a "Renewed Motion" because the court denied Main Turbo's original Motion without prejudice to permit Plaintiffs, upon their request, to conduct limited jurisdictional discovery. (Order (Doc. No. 25).) In support of its Renewed Motion, Main Turbo has submitted two affidavits from its president, as well as documentation pertaining to its overhaul of the turbocharger at issue.[3] Opposing the Renewed Motion, Plaintiffs have submitted their own evidence obtained during the jurisdictional discovery period. The following jurisdictional facts are gleaned from this evidence.

Main Turbo has no offices or registered agents in Alabama, owns no property in Alabama, is not registered to do business in Alabama and employs no workers in this state. (Main Aff. I ¶ 3.) Main Turbo does not advertise in any local Alabama media or

---

[3] The court refers to Main's affidavit, dated July 12, 2007, as "Main Aff. I" and to Main's affidavit, dated April 18, 2008, as "Main Aff. II."

advertising markets.  (Id. ¶ 4.)  Occasionally, Main Turbo places advertisements in Trade-A-Plane, a national magazine advertising aviation parts, aircraft sales, used aircraft and aircraft dealers.  (Id.)  Main Turbo maintains an informational internet website.  (Id. ¶ 5.)  The website does not allow customers to "post" information or inquiries, to order service or parts or to communicate with Main Turbo.  (Id.)

As part of its repair business, Main Turbo sometimes uses parts originally manufactured by Kelly.  (Id. ¶ 6.)  Prior to March 2005, Main Turbo purchased parts directly from Kelly, although Main Turbo is not aware of any written agreement or contract ever existing between Main Turbo and Kelly for these purchases.  (Main Aff. II ¶ 6.)  Since March 2005, Main Turbo has purchased Kelly-manufactured parts exclusively from Aviall, an aftermarket aircraft parts distributor based in Dallas, Texas.  (Id.); (see also Main Aff. I ¶ 6); (Main Turbo Resp. 11(a) to Pls. Req. for Interrogs.)

Main Turbo services approximately 1,000 turbochargers per year.  (Main Aff. I ¶ 8.)  According to its records, Main Turbo received repair orders from seven Alabama customers during 2002, 2003, 2004 and 2005.  (Main Aff. II ¶ 3.)  Main Turbo charged approximately $16,235.55 for all of the orders it received from those Alabama customers during this four-year period.  (Id.)  Based on these figures, annual revenues from Alabama customers accounted for less than one-half of one percent of Main Turbo's overall revenues for these four years.  (Id. ¶ 4.)  Similarly, Main Turbo's repair orders received from Alabama customers after 2005 have accounted for less than one-half of one percent of overall revenues.  (Main Aff. I ¶ 8.)

6

## V.  DISCUSSION

Main Turbo says that none of its contacts with the State of Alabama relate to Plaintiffs' negligence and wantonness claims, so as to satisfy the requirements for specific personal jurisdiction, and further that it (Main Turbo) does not have "continuous and systematic contacts with Alabama" to support the court's exercise of general personal jurisdiction over it.  (Main Turbo Mot. at 2 (Doc. No. 28).)  Plaintiffs, however, argue that Main Turbo's Alabama customer base and buying relationship with Kelly, an Alabama corporation, are contacts sufficient to establish either specific or general personal jurisdiction in Alabama.  (Pls. Resp. (Doc. No. 31).)  For the reasons to follow, the court agrees with Main Turbo.

Federal courts are "bound by state law concerning the amenability of a person or a corporation to suit, so long as state law does not exceed the limitations imposed by the Due Process Clause of the Fourteenth Amendment."  Pesaplastic, C.A. v. Cincinnati Milacron Co., 750 F.2d 1516, 1521 (11th Cir. 1985).  However, "[w]hen the courts of the forum State have interpreted the forum's long-arm statute to confer jurisdiction to the limits allowed by federal due process, state law need not be applied: [the court] need only ask whether the exercise of jurisdiction over the nonresident defendant comports with due process."  Vermeulen v. Renault U.S.A., Inc., 975 F.2d 746, 753 (11th Cir. 1992), op. modified and superseded on other grounds, 985 F.2d 1534 (11th Cir. 1993).  Here, Alabama's long-arm statute authorizes personal jurisdiction to the fullest extent permitted by the United States Constitution.  See Sloss Indus. Corp. v. Eurisol, 488 F.3d 922, 925

(11th Cir. 2007)**;** Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc., 207 F.3d 1351, 1355-56 (11th Cir. 2000).

The Due Process Clause protects one's liberty interests by shielding an individual from binding judgments in a forum with which he or she has established no meaningful contacts, ties or relations.  See Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945). Due process, thus, requires that a non-resident defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Id. at 316 (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)); see also Ruiz de Molina, 207 F.3d at 1356.  The "nature and quality" of the minimum contacts differ "depending upon whether the type of personal jurisdiction being asserted is specific or general."  Consolidated Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1291 (11th Cir. 2000).  Here, as stated, both types of personal jurisdiction are at issue.

## A.  Specific Personal Jurisdiction

Specific personal jurisdiction is "jurisdiction arising 'out of a party's activities in the forum state that are related to the cause of action alleged in the complaint.'"  Sloss Indus. Corp., 488 F.3d at 925 (citation omitted).  To constitute sufficient minimum contacts for a court's exercise of specific personal jurisdiction over a nonresident defendant, the contacts with the forum state (1) "must be related to the plaintiff's cause of action or have given rise to it," (2) "must involve 'some act by which the defendant

purposefully avails itself of the privilege of conducting activities within the forum,'" and

(3) must be "such that [the defendant] should reasonably anticipate being haled into court

there."  Vermeulen, 985 F.2d at 1546 (internal citations omitted); see also Sloss Indus.

Corp., 488 F.3d at 925.


*1.  The Relationship Between the Contacts and the Causes of Action*

Main Turbo argues that it "had no contacts with Alabama that relate to this cause

of action," explaining that

> [t]he plaintiffs are residents of Ohio; the turbocharger at issue was sent to
> Main Turbo for repair by one of its customers, Airtolin, which is based in
> Cincinnati, Ohio; the alleged faulty repair of plaintiffs' turbocharger by
> Main Turbo was performed in California; the turbocharger was returned to
> Airtolin in Ohio; and the crash in question occurred in Tennessee.
> Moreover, nearly all the parts Main Turbo used in its refurbishment of the
> subject turbocharger were purchased by Main Turbo from the Texas-based
> Avial aircraft parts supplier.

(Main Turbo Mot. at 6 (Doc. No. 28) (internal citation omitted)); (Main Turbo Reply at 2

& n.1 (Doc. No. 32).)  Plaintiffs, however, argue that Main Turbo had a contact with

Alabama that relates to the cause of action because the Peases' turbocharger and the

component parts used by Main Turbo to make the repairs to the turbocharger were

manufactured by an Alabama corporation which is Kelly.  (Pls. Resp. at 11 (Doc. No.

31).)

Plaintiffs, though, have not cited any authority in support of their position that

specific personal jurisdiction over Main Turbo exists solely because an Alabama-

manufactured product is at the core of Mr. Pease's negligence and wantonness claims

against Main Turbo.  True, the action relates to Main Turbo's alleged faulty work on a

product manufactured in Alabama, but it simply does not relate to a contact Main Turbo

had in Alabama.  The alleged faulty work which forms the basis of Plaintiffs' negligence

and wantonness claims was performed by Main Turbo in California, thousands of miles

from the boundaries of the state of Alabama.  The alleged negligent and wanton acts,

thus, did not occur within the forum state.  Cf. Lamb v. Turbine Designs, Inc., 207 F.3d

1259, 1261 (11th Cir. 2000) (a "defendant who commits a tort in a particular state should

reasonably expect to be subject to jurisdiction in that state, and exercise of personal

jurisdiction under these circumstances does not violate due process") (citing Helicopteros

Nacionales de Colombia, S. A. v. Hall, 466 U.S. 408, 414 n.8 (1984)).  There is no

evidence that the turbocharger entered the state of Alabama after Main Turbo completed

the repairs.  Main Turbo shipped the turbocharger to Ohio, and, thereafter, the accident

occurred in Tennessee and resulted in injury to an Ohio resident.  This case, thus, is not

one where the plaintiff is a resident of the forum and suffered injuries in the forum state

as a result of an act committed by Main Turbo outside of the state.  Cf. Bearry v. Beech

Aircraft Corp., 818 F.2d 370, 374 (5th Cir. 1987) (holding that, for purposes of specific

jurisdiction, a state's "direct interest in the cause of action" is heightened if the harm

occurs in the forum and if the plaintiff resides in the forum).

Moreover, Main Turbo did not enter into any contract or even have a

communication with any Alabama entity or person for the repair work of the subject

turbocharger or for the purchase of the repair parts.  Rather, the turbocharger was sent to

Main Turbo from an Ohio company which requested the repair work, and the repair parts

were purchased by Main Turbo from a supplier in Dallas, Texas, not from Kelly or any other Alabama company. As concerns Kelly, there is no evidence that there were any direct dealings between it and Main Turbo concerning either the repair to the turbocharger or the purchase of parts. Also, no travels were made by Main Turbo to Alabama in connection with the repair work at issue. There simply is no evidence of any activity by Main Turbo "'in the forum state'" which is related to the causes of action against Main Turbo. Sloss Indus. Corp., 488 F.3d at 925 (citation omitted).

### 2. Purposeful Availment

While Plaintiffs focus on the fact that the turbocharger and repair parts were manufactured by Kelly in Alabama, the decision to set up manufacturing operations in Alabama not only is unrelated to the causes of action, but also is not attributable to Main Turbo. There is no evidence that Main Turbo had any say as to the state in which Kelly chose to manufacture its products. Consequently, the court finds that Kelly's manufacture of the turbocharger and the component repair parts in Alabama is a "'unilateral activity'" by Kelly, not an activity by which Main Turbo "'purposefully avail[ed] itself of the privilege of conducting activities within the forum State[.]'" Madera v. Hall, 916 F.2d 1510, 1516 (11th Cir. 1990) (citation omitted); Sybaritic, Inc. v. Interport Int'l, Inc., 957 F.2d 522, 525 (8th Cir. 1992) (forum-based activities, such as the manufacture of the product, "were more appropriately treated as unilateral acts not related to the cause of action"). The court's finding holds true, notwithstanding Plaintiffs' assertion that Main Turbo knew that the turbocharger and the repair parts were manufactured in Alabama.

11

See Hydrokinetics, Inc. v. Alaska Mechanical, Inc., 700 F.2d 1026, 1029 (5th Cir. 1983)

(out-of-state defendant knew goods it ordered were manufactured in the forum, but the

court did not have personal jurisdiction because the place of manufacture was a

"unilateral activity" by plaintiff and no performance by defendant other than payment was

to take place in the forum); Lakeside Bridge & Steel Co. v. Mountain State Constr. Co.,

597 F.2d 596, 603 (7th Cir. 1979) (court "no more had [personal] jurisdiction" based on

out-of-state defendant's knowledge that purchased goods were manufactured in the forum

state "than would the courts of England or Taiwan if [plaintiff] had chosen to have the

goods manufactured in either of those places").


### 3. Reasonable Expectation of Being Haled into Court in Alabama

It logically follows that because Main Turbo did not have any contacts with

Alabama that relate to the cause of action and did not purposefully direct any activity at

the forum state, its contacts are not "such that [it] should reasonably anticipate being

haled into court [in Alabama]." Vermeulen, 985 F.2d at 1546. Any other conclusion

simply would contravene "[c]ommon sense and everyday experience." Helicopteros, 466

U.S. at 416.


### 4. Summary

Based on the foregoing, the court finds that Main Turbo is not subject to suit in

Alabama under a specific personal jurisdiction theory. The court, thus, finds that

personal jurisdiction is proper, if at all, only under the more restrictive standard of general personal jurisdiction.

## B.  General Personal Jurisdiction

_____"General personal jurisdiction . . . arises from a defendant's contacts with the forum that are unrelated to the cause of action being litigated."  Consolidated Development Corp., 216 F.3d at 1292.  "The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and the forum state."  Id.; Rogers v. Nacchio, 241 Fed. Appx. 602, 606 (11th Cir. 2007) (nonresident defendant's contacts "must be substantial").  The contacts must be "so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely distinct from those activities."  Int'l Shoe, 326 U.S. at 318.

In Helicopteros, there was insufficient evidence to establish general personal jurisdiction over the nonresident defendant, Helicol.  466 U.S. at 411.  Focusing on whether there were substantial forum contacts by the nonresident defendant, the Supreme Court explained:

> Helicol never has been authorized to do business in Texas and never has had an agent for the service of process within the State.  It never has performed helicopter operations in Texas or sold any product that reached Texas, never solicited business in Texas, never signed any contract in Texas, never had any employee based there, and never recruited an employee in Texas.  In addition, Helicol never has owned real or personal property in Texas and never has maintained an office or establishment

13

there.  Helicol has maintained no records in Texas and has no shareholders
in the State.

Id. at 411.  Main Turbo's presence, or rather lack thereof, in Alabama substantially

mirrors Helicol's such that the court, for the most part, could substitute "Alabama" for

"Texas" in the foregoing paragraph.  Main Turbo, as noted earlier, is a California

company.  It does not have any offices, employees or registered agents in Alabama.  It

does not own any real property in Alabama.  It is not registered to do business in

Alabama.  It does not advertise in any local Alabama media, only in a national advertising

magazine.  While it has a website, the website is not interactive.

The foregoing facts are not in dispute, and no argument has been made that these

facts are legally sufficient to support the court's exercise of personal jurisdiction over

Main Turbo.  For instance, although Main Turbo advertises in a national magazine, it is

well established that "merely advertising in magazines of national circulation that are read

in the forum state is not a significant contact for jurisdictional purposes."  Lawson Cattle

& Equip., Inc. v. Pasture Renovators LLC, 139 Fed. Appx. 140, 143 (11th Cir. 2005)

(internal quotations omitted).  As explained in Lawson Cattle & Equipment, Inc.,

"[o]therwise, a business that advertised in a national magazine would be subject to

jurisdiction in virtually every state."  Id.  The advertisement is a countable contact, but it

does "not count for much," id., and Plaintiffs have not argued otherwise on the facts in

this record.  Plaintiffs also have not presented any evidence contradicting Main Turbo's

attestations that its internet activity was "passive," and "[a] passive Web site that does

little more than make information available to those who are interested in it is not grounds

for the exercise [of] personal jurisdiction."  ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 714 (4th Cir. 2002).

Rather, the dispute centers on the revenues Main Turbo earned from sales to Alabama customers and on Main Turbo's relationship with Kelly.  Main Turbo argues that its limited revenues from repair orders from Alabama customers -- less than one-half of one percent annually of total revenues -- cannot justify requiring a small family business to travel across the country to defend a suit in Alabama.  Main Turbo says that these de minimis sales simply are insufficient to warrant the imposition of jurisdiction over it by this court.  Plaintiffs, though, fault Main Turbo's analysis, stating that it "is purely about dollars."  (Pls. Resp. at 7 (Doc. No. 31).)  They point out that some of Main Turbo's Alabama customers were "repeat customers," a fact which they say is significant because it demonstrates that Main Turbo has "ongoing business relationships" with some Alabama customers.  (Id.)  Relatedly, although the revenues derived from sales to Alabama customers are small in relation to Main Turbo's overall revenues, Plaintiffs argue that these sales show that Main Turbo consistently and systematically "returns to the State of Alabama to do business" and earns "between $5,000 and $8,000 in any given calendar year."  (Id.)

As inviting as Plaintiffs' argument may be, Plaintiffs have not cited any authority which would permit the court to overlook the fact that the repeat business in back-to-back years from in-state customers generated small revenues in comparison to overall revenues.  Although the line delineating what is sufficient in terms of sales figures for general personal jurisdiction is not clearly drawn, this circuit has addressed a company's

15

volume of business in assessing personal jurisdiction.  In <u>Associated Transport Line, Inc.</u>

<u>v. Productos Fitosanitarios Associated Transport Line, Inc.</u>, the Eleventh Circuit held that

a foreign corporation's nine sales to the United States within a four-year period were

insufficient to support general personal jurisdiction.  <u>See</u> 197 F.3d 1070, 1075 (11th Cir.

1999).  In <u>Wolfson v. Houston Post Co.</u>, the old Fifth Circuit held that the exercise of

personal jurisdiction was improper over an out-of-state publisher where its contact with

the forum consisted of subscribers to its Sunday and daily subscriptions amounting to

0.15 percent and .008 percent, respectively, of its total circulation and advertising

revenues totaling less than .153 percent of total advertising revenues.  <u>See</u> 441 F.2d 735,

736 (5th Cir. 1971).[4]  Other courts similarly have found that a small percentage of

business attributable to in-state sales does not constitute doing business in the forum state

for purposes of general personal jurisdiction.  In <u>Harlow v. Children's Hospital</u>, for

example, the plaintiff pointed to the out-of-state hospital's "ongoing relationship" with the

forum state's Medicaid agency and the revenue derived from that agency.  432 F.3d 50,

65 (1st Cir. 2005); (<u>see</u> Main Turbo Resp. at 8 n.6 (citing <u>Harlow</u>).)  The court, though,

held that these revenues which accounted for only 0.5 percent of overall revenues did not

"alter the basic fact that the Hospital is not 'engaged in continuous and systematic

activity, unrelated to the suit'" in the forum state.  <u>Harlow</u>, 432 F.3d at 66; <u>see also</u>

<u>Hi-Tex, Inc. v. TSG, Inc.</u>, 87 F. Supp.2d 738, 743 (E.D. Mich. 2000) (finding general

personal jurisdiction lacking where nonresident defendant derived "[s]ubstantially less

---

[4] This case was decided prior to the close of business on September 30, 1981, and is binding precedent under <u>Bonner v. Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981).

16

than one percent" of its business from forum-based customers); <u>Charlesworth v. Marco</u>

<u>Mfg. Co.</u>, 878 F. Supp. 1196, 1201 (N.D. Ind. 1995) ("the law is clear that . . . sales [in

the forum state] give rise to general personal jurisdiction only where the amount of sales

is 'significant'").

Judging Main Turbo's revenues generated from Alabama customers against the

revenues cited in the above cases, the court finds that Main Turbo's sales are not

significant.  The court also is persuaded, based upon the foregoing authorities, that Main

Turbo's limited revenues do not amount to the substantial, continuous, and systematic

contacts required to confer general personal jurisdiction over Main Turbo.

In reaching this conclusion, this court has not overlooked Plaintiffs' other

arguments made in an attempt to strengthen their position in support of the court's

exercise of general personal jurisdiction over Main Turbo.  In this regard, Plaintiffs argue

that, but for Kelly, "an Alabama corporation which supplied [Main Turbo] with the

component parts necessary to stay in business," Main Turbo could not have "realize[d]

many millions of dollars in revenues."  (Pls. Resp. at 6.)  Plaintiffs argue that Main Turbo

has attempted to minimize the significance of its economic relationship with Kelly by

focusing only on the "one-half of one percent of its annual revenues from sales to

Alabama customers," (<u>id.</u> at 6-7), but that the court should not ignore that Main Turbo

"purchased almost all of its aircraft parts necessary for its business from an Alabama

corporation enabling it to realize more than $6 million in revenues leading up to the date

of the accident in June 2005" and that, after 2005, although Main Turbo did not purchase

parts directly from Kelly, Kelly nonetheless "was the manufacturer of aircraft parts in the

17

State of Alabama which permitted Main Turbo to do business and to continue to profit from its endeavors." (Id. at 6.)

The court, though, fails to see how Main Turbo's large volume purchases, even if made out of what Plaintiffs suggest was a business necessity, are distinguishable from those made by the nonresident defendant in Helicopteros. In Helicopteros, for a continuous eight-year period, the nonresident defendant purchased 80 percent of its helicopter fleet, as well as $4,000,000 worth of spare parts and accessories, from the forum state. See 466 U.S. at 411. Concluding that these contacts which were unrelated to the cause of action were insufficient to support the exercise of personal jurisdiction over the nonresident, the Supreme Court held that "[m]ere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions."[5] Id. at 418; see also Rosenberg Bros. & Co. v. Curtis Brown Co., 260 U.S. 516, 518 (1923) (holding that visits by out-of-state defendant to forum state to purchase "a large part of the merchandise" which was sold in defendant's out-of-state small clothing store were of no "legal significance" in the personal jurisdiction analysis).

No matter how Plaintiffs couch their "purchase" argument, at best, it boils down to one that Main Turbo made repeated purchases directly from the forum state at least until

---

[5] As recognized by the Eleventh Circuit, "non-resident purchasers are not treated the same as non-resident sellers for purposes of personal jurisdiction." Sloss Indus. Corp., 488 F.3d at 930 n.10. "'Solicitation by a nonresident purchaser for delivery outside the forum state is a more minimal contact than that of a [nonresident] seller soliciting the right to ship goods into the forum state.'" Id. (citation omitted).

18

March 2005.  But, as in <u>Helicopteros</u>, these repeated purchases are not related to the

instant lawsuit and are plainly insufficient under <u>Helicopteros</u> to support the court's

exercise of general personal jurisdiction over Main Turbo.

      Nor is the court persuaded by Plaintiffs' argument that Alabama has a sufficient

interest in Main Turbo's conduct because the majority of the repair parts used by Main

Turbo in its business were manufactured in Alabama.  A similar argument was rejected

by the Fifth Circuit.  In <u>Bearry v. Beech Aircraft Corp.</u>, the Fifth Circuit disagreed with

the district court's assessment that Texas had a "general interest" in the out-of-state plane

manufacturer's conduct because "'many of the components of [its] products come from

Texas and thus the crash of a Beech aircraft may result in a Texas resident being called to

answer for its product's condition.'"  818 F.2d 370, 377 (5th Cir. 1987).  It explained,

> The concerns that injuries might occur in the state or might somehow
> implicate Texas component-part manufacturers are adequately protected.
> Beech is subject to the specific jurisdiction of Texas courts when its
> product causes injuries or when it breaches a contract in Texas.  Assertion
> of such broad interests do not suffice, however, to override the burdens
> placed upon Beech by this lawsuit.

<u>Id.</u>  <u>Bearry</u>'s conclusion rested on fairness, also a consideration in the personal

jurisdiction analysis.  <u>Id.</u> (citing <u>Asahi Metal Ind. v. Superior Court</u>, 480 U.S. 102, 107

(1987)); <u>see</u> <u>Int'l Shoe</u>, 326 U.S. at 316 (due process requires that nonresident defendant

have "certain minimum contacts with [the forum state] such that the maintenance of the

suit does not offend 'traditional notions of fair play and substantial justice'").  As in

<u>Bearry</u>, Plaintiffs' claims against Main Turbo implicate "virtually no distinct interest of

[Alabama]."  <u>Bearry</u>, 818 F.2d at 377.  To repeat, Main Turbo is not qualified to do

business in Alabama.  It owns no property in Alabama and maintains no facilities or agents in Alabama.  Yet, Plaintiffs ask Main Turbo, a California company, to defend a lawsuit in Alabama, away from the plane crash in Tennessee brought by Ohio residents.

Finally, Plaintiffs argue that another "distinct basis" for finding general personal jurisdiction arises from Main Turbo's "ongoing customer service relationship with Kelly." (Pls. Resp. at 8 (Doc. No. 31).)  They, however, have not cited any evidence of such a relationship or otherwise factually developed the argument.  See U.S. v. Cardona, 302 F.3d 494, 497 (5th Cir. 2002) ("arguments in brief are not evidence").  Also, absent from their brief is any supporting legal authority.  Accordingly, the court finds that Plaintiffs' argument does not offer any substantive value for purposes of the personal jurisdiction analysis.

Overall, the court finds that the record does not show that Main Turbo engaged in continuous and systematic contacts with Alabama such that this court can exercise general personal jurisdiction over Main Turbo.  Helicopteros, 466 U.S. at 414-15.  The contacts, which the court has considered in their totality, are insufficient in both quantity and quality to support general personal jurisdiction against Main Turbo.  Also, the court is convinced that the exercise of general personal jurisdiction over Main Turbo would not be fair.

## C.  Conclusion

Neither specific nor general jurisdiction exists over Main Turbo.  Because personal jurisdiction over Main Turbo is lacking, the court finds that Plaintiffs' action

against Main Turbo must be dismissed pursuant to Rule 12(b)(2) of the Federal Rule of

Civil Procedure.

## VI.  ORDER

Accordingly, it is CONSIDERED and ORDERED that Main Turbo Systems' Rule

12(b)(2) Renewed Motion to Dismiss be and the same is hereby GRANTED and that

Main Turbo is hereby DISMISSED as a Defendant in this lawsuit.

Done this 20th day of June, 2008.

/s/ Ira DeMent
SENIOR UNITED STATES DISTRICT JUDGE

A copy of this checklist is available at the website for the USCA, 11th Circuit at www.ca11.uscourts.gov
Effective on April 9, 2006, the new fee to file an appeal will increase from $255.00 to $455.00.

## CIVIL APPEALS JURISDICTION CHECKLIST

1.  **Appealable Orders:** Courts of Appeals have jurisdiction conferred and strictly limited by statute:

    (a)  **Appeals from final orders pursuant to 28 U.S.C. § 1291:** Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C.§ 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. v. Mestre, 701 F.2d 1 365, 1 368 ( 11th Ci r. 1 983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. § 636(c).

    (b)  **In cases involving multiple parties or multiple claims,** a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b). Williams v. Bishop, 732 F.2d 885, 885- 86 (11th Cir. 1984). A judg ment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S.196, 201, 108 S.Ct. 1717, 1721-22, 100 L .Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

    (c)  **Appeals pursuant to 28 U.S.C. § 1292(a):** Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions . . ." and from "[i]nterlocutory decrees . . . determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

    (d)  **Appeals pursuant to 28 U.S.C. § 1292(b) and Fed.R.App.P. 5**: The certification specified in 28 U.S.C. § 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

    (e)  **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964).

Rev.: 4/04

2.   **Time for Filing**: The timely filing of a notice of appeal is mandatory and jurisdictional. Rinaldo v. Corbett, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P. 4(a) and (c) set the following time limits:

(a)   **Fed.R.App.P. 4(a)(1):** A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD – no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

(b)   **Fed.R.App.P. 4(a)(3):** "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

(c)   **Fed.R.App.P. 4(a)(4):** If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

(d)   **Fed.R.App.P. 4(a)(5) and 4(a)(6):** Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

(e)   **Fed.R.App.P. 4(c):** If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3.   **Format of the notice of appeal:** Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. See also Fed.R.App.P. 3(c). A pro se notice of appeal must be signed by the appellant.

4.   **Effect of a notice of appeal:** A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).